IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCE LOCAL MEDIA LLC, ADVANCE MAGAZINE PUBLISHERS INC. D/B/A CONDE NAST, THE ATLANTIC MONTHLY GROUP LLC, FORBES MEDIA LLC, GUARDIAN NEWS & MEDIA LIMITED, INSIDER, INC., LOS ANGELES TIMES COMMUNICATIONS LLC, THE MCCLATCHY COMPANY, LLC, NEWSDAY, LLC, PLAIN DEALER PUBLISHING CO., POLITICO LLC, THE REPUBLICAN COMPANY, TORONTO STAR NEWSPAPERS LIMITED, AND VOX MEDIA, LLC,<br><br>  Plaintiffs,<br><br>v.<br><br>COHERE INC.,<br><br>  Defendant. | Civil Action No. 1:25-cv-01305-CM |

**DEFENDANT COHERE INC.'S REPLY
IN SUPPORT OF PARTIAL MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

                                                                                           **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..............................................................................................................................1

    I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR SECONDARY COPYRIGHT LIABILITY (COUNT II)................................................................1

          A.     Plaintiffs' Vicarious And Contributory Infringement Theories Fail Because They Do Not Plausibly Allege User Direct Infringement. ............1

          B.     Both Of Plaintiffs' Contributory Infringement Theories Also Fail Because Plaintiffs Do Not Allege Knowledge Of Direct Infringement...............................................................................................3

          C.     Plaintiffs' Contributory Inducement Theory Fails For Lack Of Affirmative Encouragement..........................................................................5

    II.    PLAINTIFFS FAIL TO ALLEGE DIRECT COPYRIGHT INFRINGEMENT THROUGH "SUBSTITUTIVE SUMMARIES" (COUNT I)....................................................................................................................6

    III.   PLAINTIFFS FAIL TO STATE TRADEMARK CLAIMS (COUNT III & IV). .......................................................................................................................7

          A.     Plaintiffs Fail To Allege Use Of Their Marks In Commerce. .....................7

          B.     Plaintiffs Fail To Allege A Plausible Likelihood Of Consumer Confusion....................................................................................................9

          C.     Any Use Of The Marks Was Nominative Fair Use. .................................10

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800-Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005) ............................................................................................... 8, 9

*Arista Recs. LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ...................................................................................................3

*Arista Recs. LLC v. Usenet.com, Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009) ....................................................................................4

*Bartz v. Anthropic PBC*,
    No. 24-CV-05417, 2025 WL 1741691 (N.D. Cal. June 23, 2025) .........................................1

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    881 F.3d 293 (4th Cir. 2018) ..................................................................................................3

*C=Holdings B.V. v. Asiarim Corp.*,
    992 F. Supp. 2d 223 (S.D.N.Y. 2013) ....................................................................................8

*Concord Music Grp., Inc. v. Anthropic PBC*,
    No. 24-CV-03811 (EKL), 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) .............................4

*Contrast Andersen v. Stability AI Ltd.*,
    744 F. Supp. 3d 956 (N.D. Cal. 2024) ...................................................................................6

*Contrast Arista Recs. LLC v. Lime Grp. LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011) ....................................................................................6

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ...............................................................................................................10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................................................................... 6, 7

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971) .................................................................................................3

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
    82 F. Supp. 2d 119 (S.D.N.Y. 1999) ......................................................................................8

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) .............................................................................................................10

*Kadrey v. Meta Platforms, Inc.*,
  No. 23-CV-03417, 2025 WL 1752484 (N.D. Cal. June 25, 2025) ............................................ 1

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013) .................................................................................................... 8

*LoanStreet, Inc. v. Troia*,
  No. 21-CV-6166, 2022 WL 3544170 (S.D.N.Y. Aug. 17, 2022) ............................................. 8

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998) .................................................................................................... 2

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ............................................................................................................ 5, 6

*New York Times Co. v. Microsoft Corp.*,
  No. 1:23-CV-11195 (SHS), 2025 WL 1009179 (S.D.N.Y. Apr. 4, 2025) ........................ 2, 4, 6

*Omega SA v. 375 Canal, LLC*,
  984 F.3d 244 (2d Cir. 2021) .................................................................................................... 4

*Raw Story Media, Inc. v. OpenAI, Inc.*,
  756 F. Supp. 3d 1 (S.D.N.Y. 2024) ......................................................................................... 7

*Rescuecom Corp. v. Google Inc.*,
  562 F.3d 123 (2d Cir. 2009) .................................................................................................... 8

*Salinger v. Random House, Inc.*,
  811 F.2d 90 (2d Cir. 1987) ...................................................................................................... 7

*Savin Corp. v. Savin Grp.*,
  391 F.3d 439 (2d Cir. 2004) .................................................................................................... 9

*Star Indus., Inc. v. Bacardi & Co.*,
  412 F.3d 373 (2d Cir. 2005) .................................................................................................... 9

*UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*,
  118 F.4th 697 (5th Cir. 2024) .................................................................................................. 3

*World Wrestling Fed'n Ent., Inc. v. Bozell*,
  142 F. Supp. 2d 514 (S.D.N.Y. 2001) ..................................................................................... 8

**Statutes**

15 U.S.C. § 1116(d)(1)(B)(i) ....................................................................................................... 10

15 U.S.C. § 1127 ............................................................................................................................ 8

**PRELIMINARY STATEMENT**

Plaintiffs' opposition to the motion to dismiss does not (because it cannot) dispute that Cohere's real-world business is enterprise AI that helps companies leverage their *own* proprietary data. Nor do Plaintiffs contest that their claims turn on how Cohere's *actual* users behave in the *real world*—and that they must offer plausible allegations directed to such users and uses. But the Complaint has no such allegations. So Plaintiffs instead resort to lawyer argument advancing the fundamentally implausible premise that Cohere's groundbreaking AI technology is "essentially … an unlicensed news syndicator" serving up knockoffs of news articles. Opp. 5. The Complaint belies this. Indeed, its only basis for suggesting that infringing news outputs are a "key selling point" for Cohere's business customers is a mock output that doesn't even quote or paraphrase an article—it just *cites* one, which is perfectly lawful. Opp. 3.

In light of this, it is unsurprising that Plaintiffs identify no instance of a Cohere customer infringing Plaintiffs' intellectual property. Plaintiffs admit as much, and that (among other reasons) dooms their secondary infringement and trademark claims. This Court should reject Plaintiffs' pleas for discovery on their implausible claims and narrow this case to the important question that is legitimately at issue: whether the development of Cohere's groundbreaking LLM technology is fair use, as two other federal district courts have recently held.[1]

**ARGUMENT**

I.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR SECONDARY COPYRIGHT LIABILITY (COUNT II).**

   A.  **Plaintiffs' Vicarious And Contributory Infringement Theories Fail Because They Do Not Plausibly Allege User Direct Infringement.**

   Plaintiffs' secondary infringement claim fails in its entirety because they have not

---

[1] *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417, 2025 WL 1752484 (N.D. Cal. June 25, 2025); *Bartz v. Anthropic PBC*, No. 24-CV-05417, 2025 WL 1741691 (N.D. Cal. June 23, 2025).

1

adequately alleged that any real Cohere user has used Cohere's tools to infringe. Mot. 9-12. Their purely investigator-generated outputs do not fill that void. Opp. 3.

*Matthew Bender & Co. v. West Publishing Co.* rejected a claim of contributory infringement because the plaintiff "failed to identify any primary infringer, other than … [its own] counsel." 158 F.3d 693, 706 (2d Cir. 1998). Plaintiffs try to distinguish *Matthew Bender* by claiming that the outputs there were the result of "thankless toil," *id.*, while Plaintiffs' have "obvious real-world appeal." Opp. 8. But *Matthew Bender* is not about whether the plaintiff's counsel's use was easy or hard. It is about whether that use was one real users engaged in or was instead just a demonstration of a *mere possibility* of infringement. Plaintiffs cannot avoid their burden to provide specific allegations about real-world uses by declaring that they are "obvious." After all, if the use is indeed so "obvious," Plaintiffs should be able to allege that even a single Cohere customer has found Cohere's tools "appeal[ing]" in this way. They do not, which makes their reliance on *New York Times Co. v. Microsoft Corp.* (at Opp. 8) self-defeating. *New York Times* could distinguish *Matthew Bender* only because examples of self-generated infringement were "*combined with* … allegations of 'widely publicized' instances of copyright infringement by end users of defendants' products." No. 1:23-CV-11195 (SHS), 2025 WL 1009179, at *9-10 (S.D.N.Y. Apr. 4, 2025) (emphasis added). There are no such allegations in this Complaint.

Plaintiffs instead rely on cases about investigators using *file-sharing* platforms to allege acts of infringement on those platforms. Opp. 5-6. The analogy is inapt. File-sharing platforms *exist* to swap files; if an investigator goes on such a platform and locates a copyrighted work there for the taking, it may well be plausible that whoever is offering that file has distributed it to others. Same with an investigator confirming that some offending product is available on a store's shelves. Here, Plaintiffs' investigators *created* the allegedly offending outputs

themselves, with no indication that any Cohere customer has ever done the same.

At bottom, the most Plaintiffs allege is that a Cohere user *could theoretically* do so. *See* Mot. 10; Opp. 7. Of course it is true that business people read news. Opp. 1, 7. Some are also avid bakers. But that does not remotely mean they would use Cohere's workplace AI tools— designed to leverage their own company's proprietary data—to elicit Plaintiffs' articles or generate a cookie recipe. If Plaintiffs have non-conclusory allegations supporting actual infringing uses, they must plead them, not just speculate that they must be out there.

### B. Both Of Plaintiffs' Contributory Infringement Theories Also Fail Because Plaintiffs Do Not Allege Knowledge Of Direct Infringement.

Even more speculative is Plaintiffs' suggestion that Cohere somehow had *knowledge* of the infringing acts they posit, an independent requirement that also dooms each theory of contributory infringement. A defendant must have (1) actual knowledge or willful blindness of (2) specific acts of infringement. Mot. 12-13; *see UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*, 118 F.4th 697, 710 (5th Cir. 2024). Plaintiffs chide Cohere for citing decisions from other circuits that adopt that rule, Opp. 9, but do not say why it is wrong. Nor could they, for it accords with this Circuit's precedent, Mot. 12, and mirrors the Supreme Court's rejection of the lesser "should have known" standard for contributory patent infringement, which shares copyright's insistence on culpability. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308-09 & n.5 (4th Cir. 2018) (discussing cases).

Plaintiffs are wrong to suggest that the Second Circuit has rejected actual knowledge or willful blindness in favor of constructive knowledge. Opp. 8-9 (citing *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) and *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). On the contrary, when a defendant has "reason to know," as those cases say, but deliberately avoids learning the truth, it is willfully blind—a standard

tantamount to actual knowledge that accords with the cases Cohere cites. *See Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 250, 254-55 (2d Cir. 2021) (instruction that defendant "had reason to know" states willful blindness standard).

Even if constructive knowledge were enough, that knowledge must still be of "specific" acts of infringement (prong 2). Mot. 12-13. Plaintiffs cite no Second Circuit case to the contrary, just a district court case where the defendant had ample knowledge of specific acts.[2] And Plaintiffs do not and cannot dispute that, whatever the particulars of the knowledge element, at bottom "'more than a generalized knowledge … of the possibility of [third-party] infringement' is required." *New York Times*, 2025 WL 1009179, at *9 (citation and alteration omitted); Mot. 12-13.

Because Plaintiffs have no such allegations about *user* behavior, they instead rely on allegations about *Cohere's* (purported) knowledge of its *own* (allegedly) infringing acts when *training* an LLM. Plaintiffs cite copyright notices they sent, terms of service Cohere supposedly ignored, and a lone cease-and-desist letter that, for all it appears, has nothing to do with the outputs of Cohere's tools at all. *See* Compl. ¶ 90. They claim this "put Cohere on notice that it was not authorized to use [Plaintiffs'] works." Opp. 10 (quoting Compl. ¶ 90). That has utterly nothing to do with whether Cohere knew of any *customer* primary infringement for a contributory infringement claim. The failure to allege this merits dismissal at the pleading stage here just as it did in *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-CV-03811 (EKL), 2025 WL 1487988, at *5 (N.D. Cal. Mar. 26, 2025), a case cited in the Motion that Plaintiffs ignore.

Given Plaintiffs' repeated resort to sleight of hand, it hardly "builds a strawman" to point

---

[2] *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 155 (S.D.N.Y. 2009) ("[O]n many occasions, Defendants' users explicitly told Defendants' technical support employees that they were engaged in copyright infringement.").

out that Cohere's alleged knowledge at most amounts to what its products are "'*capable* of doing.'" Opp. 11 (quoting Mot. 13); *see* Opp. 10 (citing allegations about development and operation of models). Contrary to Supreme Court precedent, Mot. 13-14, Plaintiffs suggest that this bare capability should be enough, at least if the defendant has "an ongoing relationship" with its supposedly infringing customers, Opp. 11. But that argument again is just speculation, because the Complaint does not say anything about Cohere's supposed relationship with customers that would somehow make it aware of a single specific instance of infringing use— little surprise, since Plaintiffs cannot even plausibly allege any such instance exists.

       **C.**       **Plaintiffs' Contributory Inducement Theory Fails For Lack Of Affirmative Encouragement.**

As for Plaintiffs' inducement claim, they agree, as they must, that a defendant must "take[] active steps to encourage direct infringement" to be liable for contributory infringement via inducement. Opp. 11. Their allegations fall far short of that mark. Mot. 14-15.

Plaintiffs aver that Cohere "built and operates AI models that retrieve, copy, and deliver [Plaintiffs'] articles to users," among its other capabilities. Opp. 11-12 (citing Complaint). But those allegations do not "go[] beyond a product's characteristics or the knowledge that it may be put to infringing uses" to reach the requisite "statements or actions directed to *promoting infringement*." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935 (2005) (emphasis added). Plaintiffs misleadingly emphasize that Cohere markets its tools as a "knowledge assistant" that can "*access* the latest news." Opp. 1 (citing Compl. ¶¶ 4, 66-67) (emphasis added). That is in no way an inducement to customers to elicit *actual infringing news articles* from Cohere's tools—the purported basis for Plaintiffs' secondary infringement claim. Plaintiffs do not deny it is perfectly lawful to advertise a means to stay informed, and they do not

5

cite any Cohere advertisement that contains infringing content. Mot. 14-15; Opp. 12.[3] Instead, Plaintiffs say "Cohere does not limit Command's outputs" to non-infringing material. Opp. 12. But that is at worst nonfeasance, not the sort of "affirmative steps" to foster infringement the law requires. *Grokster*, 545 U.S. at 936-37.[4]

## II. PLAINTIFFS FAIL TO ALLEGE DIRECT COPYRIGHT INFRINGEMENT THROUGH "SUBSTITUTIVE SUMMARIES" (COUNT I).

There is no need for "expert or lay testimony" to reject Plaintiffs' claim that Cohere directly infringes by generating "substitutive summaries." Opp. 16. This Court can see for itself that Plaintiffs' exceedingly broad theory would embrace loose paraphrases of unprotected factual material, with not enough overlapping expression to render them substantially similar to Plaintiffs' works. Mot. 15-17; *New York Times*, 2025 WL 1009179, at *27 ("Numerous district courts have resolved the substantial similarity question at the pleading stage[.]"). Indeed, several do not replicate any of "the precise words" Plaintiffs used. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991); *see, e.g.*, Compl. Ex. B, Nos. 5, 50.

Plaintiffs emphasize that some summaries contain the same or similar phrases to Plaintiffs' works. Opp. 15. That is inevitable. Certain facts cannot be conveyed without common language, like that someone was not "arrested or charged with a crime," Compl. Ex. B, No. 24; the name and job title of a person or the quote they gave, *id.* Nos. 25, 49; or, in a sports recap, the name, position, and stats of a key player, *id.* No. 39. But if this Court were to agree that this

---

[3] *Contrast Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 968 (N.D. Cal. 2024) (CEO publicly announced that the model, which was built by "compress[ing]" copyrighted images, could "'recreate' any of those images") (cited at Opp. 12).

[4] *Contrast Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 428-30 (S.D.N.Y. 2011) (defendant's file-sharing program "ensur[ed] that users can obtain unauthorized copies of recordings through [its service]," "actively assisted [its] users in committing infringement," and made an "intentional decision not to employ" filtering technology) (cited at Opp. 12).

6

triggers liability, the news business itself would be illegal. Instead, the amount of copied expression must "*exceed*[] that necessary to disseminate the facts." *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987) (citation omitted) (emphasis added) (cited at Opp. 14).

This Court should reject Plaintiffs' vastly overbroad theory of direct infringement that would embrace factual summaries, reaffirming the "most fundamental axiom of copyright law"—that facts and ideas are not protected. *Feist*, 499 U.S. at 344-45; *see Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 7 (S.D.N.Y. 2024) (McMahon, J.) ("Plaintiffs [news organizations] have nowhere alleged that the *information* in their articles is copyrighted, nor could they do so."). Plaintiffs should not be permitted to litigate their claims on the premise that any summarization of any content of any news article is infringement.

### III. PLAINTIFFS FAIL TO STATE TRADEMARK CLAIMS (COUNT III & IV).

Plaintiffs declare that they have pled a "classic" trademark claim, Opp. 16, but saying it does not make it so. What speaks louder is what Plaintiffs cannot dispute: The entirety of their claim is based on purportedly "incorrect, one-off response[s] to … hypothetical user request[s] for information." Mot. 18. Plaintiffs point to nothing in their Complaint alleging an actual commercial communication by Cohere using their marks—just the conjectural possibility of unique outputs to individual users, based on unique requests, that may use the names of their publications alongside generated content they claim is inaccurate. This novelty, which no other generative AI plaintiff has even attempted, is a "classic" candidate for pleading-stage dismissal.

#### A. Plaintiffs Fail To Allege Use Of Their Marks In Commerce.

Plaintiffs do not adequately allege that Cohere uses their marks in commerce, a necessary element. Mot. 18-20. To begin with, Plaintiffs do not deny their failure to "plead 'use of [their] marks in the real world with a real person,'" but insist that their "investigators' purchases can establish trademark infringement." Opp. 19 (quoting Mot. 19). That may make sense for

7

"investigators *posing as consumers*" to purchase an actual product. *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 124 (S.D.N.Y. 1999) (emphasis added) (cited at Opp. 19). It makes none when the investigator's aim is to manipulate an AI product into generating an output that has never existed before and never will again. Mot. 2, 10.

Even if the sorts of outputs Plaintiffs complain about did exist, the mere appearance of a Plaintiff's marks in a generated, individualized response to a user is not a use in commerce. *Contra* Opp. 18-19. There is no dispute that "a mark shall be deemed to be in use in commerce" only when "it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013) (quoting 15 U.S.C. § 1127). It is not sufficient that Cohere's tools may result in the "display[] [of] a trademark online." Opp. 18. Plaintiffs' own citations confirm the point,[5] as does the "alternate basis for [the] decision" in *1-800-Contacts, Inc. v. WhenU.Com, Inc. (WhenU.Com)*, 414 F.3d 400 (2d Cir. 2005), which Plaintiffs flatly ignore. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 128-29 (2d Cir. 2009) (explaining that, in *WhenU.Com*, "the trigger to display the ad was not based on the defendant's sale or recommendation of a particular trademark").

Plaintiffs' use-in-commerce argument also fails because (a) they acknowledge that Cohere's product or service is "Cohere's models" or "[c]hat interface," not the outputs they complain of, Opp. 18, and (b) these allegedly offending outputs do not attempt to sell Cohere's product or service at all. So even the hypothetical outputs Plaintiffs posit are not "public

---

[5] *LoanStreet, Inc. v. Troia*, No. 21-CV-6166, 2022 WL 3544170, at *10 (S.D.N.Y. Aug. 17, 2022) (discussing use of the internet to "purchase[] advertisements via Google's advertising platform that publicly displayed the LoanStreet name"); *World Wrestling Fed'n Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 529 (S.D.N.Y. 2001) (discussing use of the internet "as part of … efforts to raise money … from members all over the country"); *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 240 (S.D.N.Y. 2013) (discussing "use of the Internet to promote []branded products").

8

communications" that Cohere "send[s]" to sell its tools, Opp. 20 (citation omitted)—like, say, an advertisement to the public. Again, no one disputes that outputs are generated through private, individualized prompts, shown only to the one user, Mot. 20, and are "triggered by the []user's input of" the mark, *WhenU.Com*, 414 F.3d at 410. And though Plaintiffs suggest that use of their marks may be commercial because they could "bolster perceptions of the models' usefulness and reliability," Opp. 18, that suggestion is hypotheticals all the way down. Plaintiffs are suggesting that a hypothetical output received by a single hypothetical person might have the hypothetical effect of bolstering Cohere to that one hypothetical mind. This stacked speculation does not plausibly allege a commercial use redressable by a trademark claim.

      **B.**      **Plaintiffs Fail To Allege A Plausible Likelihood Of Consumer Confusion.**

Plaintiffs argue that they have alleged consumer confusion under the *Polaroid* factors, but again the very notion fails at the threshold: They have not identified even a single instance of a real user *receiving* an offending output, let alone being misled by it. And even if they had, Plaintiffs certainly cannot show that an "*appreciable* number of ordinarily prudent purchasers" might be confused. *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (citation omitted) (emphasis added). This makes it impossible to even evaluate the plausibility that Cohere's tools might confuse consumers. And this is not a shortcoming discovery could overcome; it is inherent in a claim based on hypothetical one-off outputs of a generative AI tool.

In response, Plaintiffs say it matters not whether an infringing output reaches "a meaningful segment of consumers," because "the frequency of Cohere's infringement does not bear on liability." Opp. 25. But confusion matters only if it "affect[s] numerous ordinary prudent purchasers." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005) (citation omitted). Plaintiffs simply do not allege that any purportedly infringing output would or could confuse numerous people. So this is just the sort of trademark case that should be dismissed at

9

the pleading stage. *E.g.*, *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 n.2 (2023) (dismissal appropriate absent plausible allegations of likely confusion).

### C.  Any Use Of The Marks Was Nominative Fair Use.

Separately, any use of Plaintiffs' marks in outputs is nominative fair use because it is simply attribution for news articles. Mot. 23-25. Even in Plaintiffs' hypotheticals, when an output returns an allegedly different version of their articles in response to a user request, the output uses Plaintiffs' mark (e.g., *The Guardian*) simply to communicate to the user the identity of the publication *the user requested*. That is true whether the output says, "Cohere does not have access to the Fort Worth Star-Telegram article you requested"—which Plaintiffs concede is nominative fair use—or, "Here is the article from the Fort Worth Star-Telegram." Opp. 22. In both outputs, the tool is just providing attribution to the publication. And in neither is Cohere using a mark to pass off Cohere's product as someone else's, as in the case of counterfeit goods. Opp. 22-23; *see* 15 U.S.C. § 1116(d)(1)(B)(i). Cohere does not sell news articles—it sells AI tools that a user could theoretically use for a news-related purpose.

Plaintiffs' invocation of counterfeit goods is also flawed for a more fundamental reason: Their claims are predicated on *communications* made up of facts and ideas, i.e., "communicative product[s]." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34 (2003). This Court should not permit Plaintiffs to turn trademark law into a broad-based restriction on core speech like conveying information and attributing it to a source.

### **CONCLUSION**

The Court should dismiss Counts II, III, and IV, and dismiss Count I to the extent it is based on "substitutive summaries."

Dated: July 25, 2025                                                  Respectfully Submitted,

|  |  |
|---|---|
| | *R. David Hosp* |
| Christopher J. Cariello | R. David Hosp |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Mark S. Puzella (*pro hac vice*) |
| 51 West 52nd Street | Sheryl Koval Garko (*pro hac vice*) |
| New York, NY 10019 | Laura Najemy (*pro hac vice*) |
| (212) 506-5000 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| ccariello@orrick.com | 222 Berkeley Street, Suite 2000 |
| | Boston, MA 02116 |
| Annette L. Hurst (*pro hac vice*) | (617) 880-1802 |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | dhosp@orrick.com |
| 405 Howard Street | mpuzella@orrick.com |
| San Francisco, CA 94105 | sgarko@orrick.com |
| (415) 773-5700 | lnajemy@orrick.com |
| ahurst@orrick.com | |
| | Geoffrey Moss (*pro hac vice*) |
| Amanda Lack (*pro hac vice*) | Avery Cartwright (*pro hac vice*) |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 353 N. Clark Street, Suite 3600 | 355 S. Grand Avenue, Suite 2700 |
| Chicago, IL 60654 | Los Angeles, CA 90071 |
| (312) 924-9800 | (213) 629-2020 |
| alack@orrick.com | gmoss@orrick.com |
| | acartwright@orrick.com |

*Counsel for Defendant Cohere Inc.*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the foregoing is proportionally spaced and contains 3,298 words, according to the word processing program used to prepare it.

*R. David Hosp*
R. David Hosp
*Counsel for Defendant Cohere Inc.*
