UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

ADVANCE LOCAL MEDIA LLC, ADVANCE
MAGAZINE PUBLISHERS INC. D/B/A
CONDE NAST, THE ATLANTIC MONTHLY
GROUP LLC, FORBES MEDIA LLC,
GUARDIAN NEWS & MEDIA LIMITED,
INSIDER, INC., LOS ANGELES TIMES
COMMUNICATIONS LLC, THE
MCCLATCHY COMPANY, LLC,
NEWSDAY, LCC, PLAIN DEALER
PUBLISHING CO., POLITICO LLC,
THE REPUBLICAN COMPANY,
TORONTO STAR NEWSPAPERS LIMITED,
AND VOX MEDIA, LCC,

                         Plaintiffs,

         -against-                                          25-cv-1305 (CM)

COHERE INC.,

                         Defendant.
———————————————————————x

**DECISION AND ORDER DENYING
DEFENDANT'S PARTIAL MOTION TO DISMISS**

McMahon, J.:

The instant dispute is one of more than fifty lawsuits currently before the courts challenging

the use of copyrighted works by artificial intelligence companies to train their large language

models.

Plaintiffs Advance Local Media LLC; Advance Magazine Publishers Inc. d/b/a Condé

Nast; The Atlantic Monthly Group LLC; Forbes Media LLC; Guardian News & Media Limited;

Insider, Inc.; Los Angeles Times Communications LLC; The McClatchy Company, LLC;

Newsday, LLC; Plain Dealer Publishing Co.; Politico LLC; The Republican Company; Toronto

Star Newspapers Limited; and Vox Media, LLC (collectively, "Publishers") bring this action against Defendant Cohere Inc. ("Cohere"), an artificial intelligence company, for copyright and trademark infringement pursuant to 17 U.S.C. §§ 106, 501 and 15 U.S.C. §§ 1114(1), 1125(a)(1)(A).

Before the court is Cohere's partial motion to dismiss Publishers' Complaint.

For the reasons set forth below, Cohere's motion to dismiss is DENIED.

## BACKGROUND

The following facts are taken from Publishers' Complaint ("Compl.") and the documents incorporated by reference therein. *See Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000). For the purpose of deciding this motion to dismiss, the court assumes these facts are true and construes them in the light most favorable to Publishers as the non-moving party. *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013).

Publishers are "some of the largest, most enduring, and most important news, magazine, and digital publishers in the United States and around the world." Compl. ¶ 1.

Defendant Cohere is a Canadian company in the business of developing, operating, and licensing artificial intelligence models. Its lead funders include large corporate technology companies such as Oracle, NVIDIA, and Salesforce.

Cohere's primary product is a suite of large language models ("LLMs") known as the Command Family of models ("Command"). Cohere markets Command as a "knowledge assistant" particularly suited to the business community, which is "designed to shortcut research and content analysis." Compl. ¶ 65. Cohere also promotes Command as a tool to receive the latest news.

Cohere's customers can pay to use Command's Chat interface based on the length of prompts submitted and output received. Alternatively, customers can "run their own instances of

the Command Family of models in computing infrastructure" under negotiated agreements with Cohere. *Id.* ¶ 64. Cohere also provides free trial access to its online Chat interface to serve its goal of capturing more paying customers. Command's Chat interface includes a basic interface and a "Playground" interface designed for more technical users. The "Playground" interface offers a feature called "Under the Hood," which allows users to see the specific sources which Command relied on in generating a response. Users can also expand Under the Hood to view full copies of any documents used to generate Command's output.

The Complaint alleges that Cohere copies Publishers' works to train its LLMs, including Command. In order to create a dataset on which to train its LLMs, Cohere collects large amounts of text from the internet by copying and downloading text directly from websites and onto its servers, using web crawlers and other bots. To train its models, Cohere also relies on a dataset created by The Common Crawl Foundation, an organization that crawls the internet and provides large portions of extracted content to the public at no cost. The Common Crawl dataset does not differentiate between copyrighted works and material in the public domain. In addition to these datasets, Cohere crawls particular websites, including Publishers', to copy content. The LLMs then generate natural-language outputs consistent with the text on which they were trained. However, the LLMs are trained only on information available in the original training dataset. For this reason, a core feature of Command is a function called Retrieval Augmented Generation ("RAG"), which allows Command to access external data sources when generating a response. In essence, RAG allows Command to stay up to date with current information. Cohere uses third-party websites – including Publishers' sites – as content sources for RAG.

Publishers allege that when the RAG feature is turned on, Command delivers outputs which reproduce Publishers' copyrighted content in response to common-sense, natural-language user

3

queries. Command may deliver a full verbatim copy, a substantial excerpt, or substitutive summary of a copyrighted work in response to a user's query. This occurs regardless of whether users explicitly ask for the specific work or ask generally for information about a topic. Additionally, when Command delivers a copy of an article to a user as part of an output, Cohere makes a copy of the article before incorporating it into its response, and further displays a copy of the article to users, which can be seen using the Under the Hood feature. Users can see full copies of Publishers' works in Under the Hood, even when those works are protected by paywalls on Publishers' websites.

Publishers further allege that a separate set of problems occurs when the RAG feature is turned off. Specifically, if a user asks Command for a copy of a particular article without using RAG, Command "will often hallucinate an answer, completely manufacturing the text of the requested article." *Id.* ¶ 118. Cohere uses marks that are indistinguishable from Publishers' federally registered trademarks in connection with the generation and distribution of hallucinated articles that Publishers did not author.

Publishers bring claims against Cohere for (I) direct copyright infringement in violation of 17 U.S.C. §§ 106(1)-(3), (5). and 501; (II) secondary copyright infringement; (III) trademark infringement in violation of 15 U.S.C. §1114(1); and (IV) false designation of origin in violation of 15 U.S.C. §1125(a)(1)(A).

Cohere now moves to dismiss Counts II, III, IV of Publishers' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Cohere also seeks dismissal of Count I to the extent Publishers' direct infringement claim is based on a theory of "substitutive summaries."

For the reasons set forth below, Cohere's motion to dismiss is DENIED.

4

**LEGAL STANDARD**

## I.    Dismissal Pursuant to Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

**DISCUSSION**

## I.    Cohere's Motion to Dismiss Publishers' Direct Copyright Infringement Claim is Denied

The Complaint alleges that Cohere unlawfully reproduced, distributed, and displayed Publishers' copyrighted works, including by delivering outputs that are either full verbatim copies, substantial excerpts, or substitutive summaries of Publishers' works, in violation of 17 U.S.C. §§ 106(1)-(3), (5), and 501.

Cohere seeks to dismiss Publishers' claim for direct copyright infringement only to the extent it alleges that Cohere is directly liable for generating "substitutive summaries" of Publishers' work. Cohere argues that Publishers' "substitutive summaries" theory must fail

because Command's summaries are not, as a matter of law, substantially similar to Publishers' works.

To state a claim for copyright infringement, a plaintiff must show both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 679 (2d Cir. 1998). To show copying, a plaintiff must "first show that his work was actually copied," and then "must establish substantial similarity" between the allegedly infringing work and protected expression in his work. *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (internal quotations omitted).

Cohere does not contest that Publishers have valid copyrights in their works. The operative question is therefore whether the protectable elements of Publishers' works are substantially similar to Command's summaries.

"The standard test in determining substantial similarity is the 'ordinary observer test': whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc*., 166 F.3d 65, 70 (2d Cir. 1999). But when a work contains both protectible and unprotectible elements, courts apply a "more discerning" ordinary observer test, asking whether there exists "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work]." *Boisson v. Banian, Ltd*., 273 F.3d 262, 272 (2d Cir. 2001).

Works are not substantially similar when their only similarity concerns underlying facts, which are not copyrightable. *See* 17 U.S.C. § 102(b); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 348 (1991). But while facts themselves are not copyrightable, factual compilations

6

"may possess the requisite originality" for copyright protection. *Feist Publ'ns, Inc.*, 499 U.S. at 348. In such cases, "Others may copy the underlying facts from the publication, but not the precise words used to present them." *Id.* Accordingly, when facts are reported "in a different arrangement, with a different sentence structure and different phrasing," no copyright infringement has occurred. *Nihon,* 166 F.3d at 71.

Cohere contends that many of Command's summaries do not copy *any* protectable expression because Command "incorporates the abstracted facts into new and original sentences." Dkt. No. 50, at 16. Even where the summaries do copy some of Publishers' works, Command argues, they do so only minimally, rendering them non-infringing.

There is no question that Cohere is entitled to republish the underlying facts contained in Publishers' works. Accordingly, in considering whether Publishers have plausibly alleged substantial similarity, the court looks only to the original elements in Publishers' presentation of the facts. The appropriate inquiry is whether "the copying is quantitatively and qualitatively sufficient" to support a finding of infringement. *Nihon*, 166 F.3d at 70 (quoting *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997)).

Publishers have adequately alleged that Command's outputs are quantitatively and qualitatively similar. Publishers argue that Command's output heavily paraphrases and copies phrases verbatim from the source article, and that these summaries "go well beyond a limited recitation of facts," including by "lifting expression directly or parroting the piece's organization, writing style, and punctuation." *Id.* ¶ 106. Publishers also provide 75 examples of Cohere's alleged copyright infringement, *see* Compl. Ex. B, 50 of which Publishers allege include verbatim copies of Publishers' original works. Publishers allege that the other 25 examples show a mix of verbatim copying and close paraphrasing. Contrary to Cohere's assertion that all of Command's summaries

7

"differ in style, tone, length, and sentence structure" from Publishers' articles, Dkt. No. 50, at 17, Publishers' examples reveal that, at least in some instances, Command delivers an output that is nearly identical to Publishers' works. For example, in response to the prompt "Tell me about the unknowability of the undecided voter," Command allegedly delivered an output which directly copied eight of ten paragraphs from a *New Yorker* article with very minor alterations. *See* Compl. Ex. B, at 21. Cohere's contention that the only similarities to Publishers' works are Command's use of the same facts is belied by Publishers' allegations and examples showing that Command's outputs directly copy and paste entire paragraphs of Publishers' articles verbatim. Indeed, Publishers allege that Cohere designed its system to do exactly that. These allegations are sufficient to create a factual issue for jury consideration.

Cohere's argument that even where the summaries *do* copy some of Publishers' expression, they do so only minimally, rendering them non-infringing, is unavailing at the motion to dismiss stage. In support of this argument, Cohere cites to the Second Circuit's decision in *Nihon* for the proposition that "copying 'approximately twenty percent of the material in the article' is generally not substantially similar but copying 'well over half of the text' usually is." Dkt. No. 50, at 17. However, the *Nihon* court expressly stated that it did "not intend to establish any principle that, as a quantitative matter, a work that copies twenty percent of a copyrighted work is never substantially similar" because "It is not possible to determine infringement through a simple word count; the quantitative analysis of two works must always occur in the shadow of their qualitative nature." 166 F.3d at 71.

Accordingly, the court declines to dismiss Publishers' claim for direct copyright infringement to the extent it is based on a theory of "substitutive summaries."

## II.    Cohere's Motion to Dismiss Publishers' Secondary Copyright Infringement Claim is Denied

Publishers also claim that Cohere is secondarily liable for unlawfully reproducing, displaying, distributing, and preparing derivatives of Publishers' copyrighted works under each of three theories: contributory infringement by material contribution, contributory infringement by inducement, and vicarious infringement.

In support of its motion to dismiss Publishers' claim for secondary copyright infringement, Cohere argues that: (1) Publishers have failed to state a claim in support of any of these three theories because they have not adequately alleged that direct infringement occurred; (2) Publishers' two theories of contributory infringement fail because they do not allege that Cohere had actual knowledge of any specific infringement by users; and (3) Publishers' theory of contributory infringement via inducement fails because Publishers offer only threadbare, conclusory allegations of inducement.

The court finds each argument to be without merit.

### A.  Publishers Have Adequately Alleged Underlying Direct Infringement

Cohere first argues that Publishers fail to state a claim of secondary copyright infringement because they have not adequately alleged that direct infringement occurred, which is a necessary precondition for a finding of secondary copyright infringement under each of Publishers' three theories. Dkt. No. 50, at 8. *See, e.g., Matthew Bender & Co. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir. 1998). According to Cohere, Publishers' allegations that Command's users and licensees plausibly engage in direct infringement is insufficient because Publishers have only provided examples of outputs received by their investigators, which do not reflect typical use by Command's users.

9

Here, Publishers have provided 75 examples of outputs received by their investigators, who they allege utilized a "variety of common-sense, natural-language user queries." *See* Compl. ¶ 91; Ex. B. Publishers have alleged that users are likely to use Command in similar ways because Cohere "solicits customers by promoting its Command models as tools to access news" and "suggests to consumers that its models provide summaries of the latest news articles." Compl. ¶ 68–69. In Cohere's free online demo for Command, for instance, Cohere even "prepopulates the interface with a request to summarize recent technology news, inviting prospective customers to use [Command] to access news stories." Compl. ¶ 69.

At the pleading stage, the court finds Publishers' allegations sufficient. As Publishers note, "the record of infringement using Command is not visible to third parties," as infringement "typically takes place behind closed doors." Dkt. No. 53, at 5 (quoting *Warner Bros. Recs., Inc. v. Payne*, 2006 WL 2844415, at \*3 (W.D. Tex. July 17, 2006). For this reason, courts routinely find that the actions of a plaintiff's investigator can form the basis of an infringement claim. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 149–150 n.16 (S.D.N.Y. 2009) (collecting cases); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, 2020 WL 5204067, at \*6 (D.N.J. Aug. 31, 2020) (same).

Cohere's reliance on *Matthew Bender v. West Publishing Co.*, 158 F.3d 693 (2d Cir. 1998) is misplaced because the *Bender* court, in deciding a motion for summary judgment, found that West Publishing Company, *after the end of discovery*, could not plausibly allege the existence of third-party infringement other than infringement by its own counsel. In *New York Times*, the court rejected the precise argument that Cohere now makes, dismissing defendants' reliance on *Bender* because at the pleading stage, it was sufficient that plaintiffs provided more than 100 pages of examples and alleged "widely publicized" instances of end-user copyright infringement. 777 F.

10

Supp. 3d at 307. I reach the same conclusion here. Publishers' allegations and 75 examples of allegedly infringing outputs spanning 125 pages are sufficient to "raise a reasonable expectation" that discovery will reveal additional evidence of third-party infringement. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Contrary to Cohere's assertions, *New York Times* does not require Publishers to allege "widely publicized" instances of alleged third-party infringement in order to survive a motion to dismiss.

Moreover, Cohere's assertion that Publishers' investigators had to breach its Terms of Service in order to receive the allegedly infringing outputs, which it claims no *bona fide* user would ever do, has no bearing on this analysis; Cohere has not cited a single case to support dismissal of an infringement claim based on a potential breach of a website's terms of service in connection with uncovering the alleged infringement.

The court therefore declines to dismiss Publishers' secondary copyright infringement claim.

**B. Publishers Have Adequately Alleged Cohere's Knowledge of Direct Infringement**

Cohere next argues that both theories of contributory infringement must be dismissed because Publishers have not alleged that Cohere had actual knowledge of any specific infringement by third parties.

Relying only on out-of-circuit cases, Cohere contends that a plaintiff is required to allege "actual knowledge of specific acts of infringement." Dkt. No. 50, at 12. Cohere is wrong. In *New York Times*, decided just a few months ago, my colleague Judge Stein declined to apply this precise "actual knowledge" standard, noting that the Second Circuit has not adopted the Ninth Circuit's heightened knowledge standard. 777 F. Supp. 3d at 305–06. The court comes to the same conclusion here and will evaluate Publishers' claim under this Circuit's standards.

In the Second Circuit, "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know *or have reason to know*' of the direct infringement." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citation omitted). While "knowledge of specific infringements is not required to support a finding of contributory infringement," a plaintiff must allege more than just a defendant's generalized knowledge of the possibility of infringement. *New York Times*, 777 F. Supp. 3d at 306 (quoting *Usenet.com*, 633 F. Supp. 2d at 154). In *New York Times*, for example, the court found that plaintiffs plausibly pleaded that defendants had far more than a "generalized knowledge of possibility" of third-party infringement where they alleged that defendants' unauthorized copying of plaintiffs' works in large quantities for purposes of training their LLMs would inevitably result in the unauthorized display of those works. 777 F. Supp. 3d at 307–308.

Like the plaintiffs in *New York Times*, Publishers allege that Cohere knew that training its LLMs, including Command, on Publishers' works would result in the unauthorized display of such works, because it was designed to do exactly that. Publishers contend that they put Cohere on notice that it was not authorized to use their works by including copyright notices with their works and terms of service on their websites, as well as by sending do-not-crawl instructions to Cohere's bots via robots.txt protocols. Additionally, Publishers claim that Cohere has continued to unlawfully copy Publishers' works despite receiving a cease-and-desist letter informing Cohere of its infringing activities. According to Publishers, Cohere receives a direct financial benefit from third-party infringement of Publishers' copyrighted articles. These allegations are sufficient to show that Cohere knew or had reason to know of third-party infringement because copyright infringement was "central to [Cohere's] business model." 777 F. Supp. 3d at 306 (quoting *Capitol*

*Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 659 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018)).

Cohere also argues that Publishers' claim must be dismissed pursuant to the Supreme Court's holding in *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984), because Cohere cannot be liable simply for knowing that Command is capable of being used in a way that would constitute infringement. Publishers point out, however, that their theory is not based on Cohere's liability for simply knowing its product could be used to infringe, but rather that Cohere intentionally programmed its system to retrieve and deliver copies of Publishers' works to third parties. As the court noted in *Andersen v. Stability AI Ltd.,* the holding in *Sony* is not applicable where, as here, plaintiffs allege that a product "is built to a significant extent on copyrighted works and that the way the product operates necessarily invokes copies or protected elements of those works." 744 F. Supp. 3d 956, 969 (N.D. Cal. 2024); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 915 (2005).

At the pleading stage, the court finds Publishers' allegations sufficient to create a plausible inference that Cohere had actual or constructive knowledge of third-party infringement.

## C. Publishers Have Adequately Alleged Inducement

Finally, Cohere argues that Publishers' theory of contributory infringement via inducement must fail because Publishers offer only threadbare, conclusory allegations of inducement. Dkt. No. 50, at 9.

A defendant who takes active steps to encourage direct infringement contributorily infringes by inducement. *Grokster*, 545 U.S. at 936. To state a claim for inducement of copyright infringement, "a plaintiff must show that the defendant (1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement." *Arista*

*Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 425 (S.D.N.Y. 2011). "A defendant's intent to foster infringement can be established by evidence of the defendant's 'clear expression' of such an intent, or of 'affirmative steps the defendant has taken to foster infringement.'" *Id.* (quoting *Grokster*, 545 U.S. at 936–37). A defendant takes affirmative steps to foster infringement by "advertising an infringing use or instructing how to engage in an infringing use[.]" *Grokster*, 545 U.S. at 936. On the other hand, "mere knowledge of infringing potential or of actual infringing uses" is not sufficient to subject a distributor to liability. *Id.* at 937.

Publishers have plausibly pleaded that Cohere takes affirmative steps to foster infringement by advertising Command as a tool to access news in order to solicit customers. The Complaint provides numerous examples of Cohere promoting Command's news reporting function. For example, in a September 2023 marketing pitch, Cohere advertised Command's ability to conduct "a web search to access the latest news about trends and competitors[.]" Compl. ¶ 67. Similarly, in September 2024, Cohere announced the Cohere AI app, touting its ability to "keep you up to date with the latest news." *Id.* ¶ 68. Publishers have further alleged that Cohere's Chat interface suggests to consumers that its models provide summaries of the latest news articles and, in the free online demo of Command, even "prepopulates the interface with a request to summarize recent technology news, inviting prospective customers to use the models to access news stories." *Id.* ¶ 69. These allegations are sufficient at the pleading stage.

According to Cohere, Publishers' allegations are insufficient to show that Cohere took "active steps" to foster infringement because "merely touting products as tools to stay up to date with 'the latest news' is not a culpable inducement to infringe." Dkt. No. 50, at 14. Once again, this misstates Publishers' theory, which is that Cohere intentionally programmed Command to generate and deliver copies of Publishers' works to third parties. As the Supreme Court made clear

14

in *Grokster,* "a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Grokster*, 545 U.S. at 936. *See also Andersen*, 744 F. Supp. 3d at 968-69.

Accordingly, Publishers' allegations are sufficient to defeat Cohere's motion to dismiss their secondary copyright infringement claim.

### III.    Cohere's Motion to Dismiss Publishers' Lanham Act Claims is Denied

Publishers' Third and Fourth Causes of Action allege trademark infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A).[1] Publishers allege that, when RAG is turned off, Command sometimes delivers a hallucinated text in response to a request for a specific article, with the output bearing Publishers' marks. Publishers contend that Cohere's use of their trademarks leads users to incorrectly believe that Command's hallucinated articles are written by, associated with, or approved by Publishers.

To survive a motion to dismiss, a complaint must plausibly allege that "(1) plaintiff owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) (quoting *Lopez v. Nike, Inc*., 2021 WL 128574, at \*4 (S.D.N.Y. Jan. 14, 2021)).

There is no dispute that Publishers have valid and exclusive rights to the trademarks at issue. Instead, Cohere argues that the Publishers' Lanham Act claims must be dismissed for three reasons. First, Publishers fail to allege use of their marks in commerce. Second, Publishers fail to

---

[1]The same standard applies to Publishers' claims for trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a)(1)(A). *1-800 Contacts, Inc. v. JAND, Inc*., 119 F.4th 234, 246 (2d Cir. 2024).

allege a plausible likelihood of consumer confusion. Third, Cohere's use of the marks is lawful as nominative fair use.

### A. Publishers Have Adequately Alleged Cohere's Use in Commerce

"[A] complaint fails to state a claim under the Lanham Act unless it alleges that the defendant has made 'use in commerce' of the plaintiff's trademark." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009); *see* 15 U.S.C. § 1127.

The Lanham Act defines "use in commerce," in relevant part, as follows:

For purposes of this Chapter, a mark shall be deemed to be in use in commerce-

(1) on goods when-

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce…

15 U.S.C. § 1127.

Cohere asserts that outputs containing Publishers' trademarks are not themselves used in commerce because Command's users do not purchase particular outputs, but instead purchase "API access" that is output agnostic. Cohere further argues that even if an output was itself a product or service, Publishers have not plausibly alleged that Cohere uses or displays their marks in the sale or advertising of its services because each output is a one-off response which is not shared with anyone except the user.

In determining whether a plaintiff has satisfied the "use in commerce" requirement, the court asks "whether the trademark has been displayed to consumers in connection with a commercial transaction." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013).

Here, Publishers have plausibly pleaded that their trademarks are displayed to consumers in connection with a commercial transaction because they allege that Cohere displays Publishers' marks online when advertising its products and services. Specifically, Publishers' trademarks are displayed to users who are using the free online trial, which exists "to serve [Cohere's] goal of capturing more paying customers." Compl. ¶ 63.

Publishers have also adequately alleged that Cohere's use of Publishers' trademarks constitutes "use in commerce" because such use is likely to divert traffic, sales, and subscriptions from Publishers. Publishers argue that because Cohere falsely attributes its own hallucinated articles to Publishers, consumers are more likely to trust the output they receive rather than navigate to the original source, and that Cohere's infringing copies "directly supplant Publishers' ability to benefit commercially from the transaction, such as through individual or enterprise-level subscription fees that Publishers would charge to access their articles or through advertising revenue Publishers would earn from web traffic to their articles." Compl. ¶ 96. Publishers further allege that Cohere delivers copies of Publishers' works to users "even when they are protected by paywalls on the Publishers' websites." Compl. ¶ 96. These allegations are sufficient at the pleading stage.

The court is not persuaded by Cohere's assertion that Publishers' failure to show Cohere's use of their marks "in the real world with a real person" prevents a finding of use in commerce. Dkt. No. 50, at 19. Cohere offers no case law to support dismissal on this basis and, as discussed

above, *supra* Section II.A, a claim based on allegations of an investigator's actions can survive a motion to dismiss.

Cohere cannot escape liability simply by claiming that it "does not use the marks in the manner ordinarily at issue in an infringement claim: it does not place the marks on any goods or services in order to pass them off as emanating from or authorized by Plaintiffs." Dkt. No. 50, at 20. But this is precisely what Publishers are alleging – that Command's outputs display Publishers' marks to users to attribute articles to them which they did not author. This is a classic passing-off claim. The only case Cohere cites in support of this argument is inapposite; in *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005), the court found that WhenU did not "use" 1-800's trademark in commerce because "When U [did] not reproduce or display 1-800's trademarks at all, nor [did] it cause the trademarks to be displayed to a C-user." 414 F.3d at 408. The same cannot be said here.

Nor can Cohere escape liability because "what the model is capable of doing is bounded by its private, business deployments." Dkt. No. 50, at 14. As the Second Circuit made clear in *Rescuecom Corp. v. Google Inc.*, use of a trademark in an internal software program does not insulate an alleged infringer from a charge of infringement. 562 F.3d 123, 129–30 (2d Cir. 2009).

The Complaint plausibly alleges that Cohere displayed Publishers' marks to consumers in connection with a commercial transaction: Cohere's advertising of its Command model. That is enough at this early stage. The extent to which Cohere used Publishers' marks is a factual issue better examined after the completion of discovery.

### B. Publishers Have Adequately Alleged a Likelihood of Confusion

Cohere next argues that Publishers fail to plausibly allege a likelihood of confusion.

To determine whether an alleged infringement is likely to cause consumer confusion, courts in this Circuit consider the eight factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (1961): "the strength of [plaintiff's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (citation omitted). However, the *Polaroid* factors "are more geared towards comparing two distinct, albeit, similar, marks." *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 400 (S.D.N.Y. 2000). Accordingly, application of the *Polaroid* test is unnecessary where use of an identical mark is at issue. *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013).

Cohere argues that dismissal is warranted because the Complaint does not allege a single real-world instance of possible consumer confusion and lacks allegations tending to show that that the *Polaroid* factors would suggest a likelihood of confusion.

The court disagrees. Publishers were not required to show that real-world consumers are likely to be confused or walk through each *Polaroid* factor in their Complaint because the Complaint alleges that Command delivers outputs containing marks which are indistinguishable from Publishers' registered trademarks – a fact which Cohere does not contest. *See Hectronic GmbH v. Hectronic USA Corp.*, 2020 WL 6947684, at *5 (S.D.N.Y. Nov. 24, 2020) (quoting *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015)).

In any event, Publishers have adequately alleged a likelihood of consumer confusion. The Complaint alleges that consumers have come to recognize Publishers' trademarks as exclusively identifying Publishers' brands, which are known to the public as high-quality sources of reliable and informative content due to decades of widespread, exclusive use. It further alleges that the marks Cohere uses are indistinguishable from Publishers' registered trademarks and that when Cohere distributes news articles, Command competes with Publishers in the marketplace. Specifically, Publishers claim that Cohere uses these indistinguishable marks when disseminating Publishers' articles in order "to build and deliver a commercial service that mimics, undercuts, and competes with lawful sources for their articles and that displaces existing and emerging licensing markets." Compl. ¶ 3. According to Publishers, it is not readily apparent to users that the output Command delivers is inaccurate, and users will therefore rely on the output as if it were Publishers' authentic content. This is especially likely given that Publishers have publicly announced the licensing of their content to other AI companies in recent years. Based on Publishers' allegations, it is plausible that an ordinary consumer would be confused about an article's source.

Cohere's argument that Publishers have not alleged that an "*appreciable* number of consumers" are likely to be confused does not change the calculus. Both *Savin Corp. v. Savin Grp.*, 391 F.3d 439 (2d Cir. 2004) and *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005) are of no help to Cohere, as both cases were decided after discovery, not at the pleading stage.

In sum, Publishers' allegations that Cohere uses marks indistinguishable from Publishers' trademarks to advertise their product is sufficient. *See Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015).

The court therefore declines to dismiss Publishers' Lanham Act claims on this basis.

### C. The Nominative Fair Use Doctrine Does Not Apply

Finally, Cohere argues that Plaintiff's Lanham Act claims must fail because any use of Publishers' marks in Command's outputs is simply attribution for news articles. Dkt. No. 50, at 23.

The exclusive right to use a trademark "does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product." *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006*)*. In other words, "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102–103 (2d Cir. 2010).

Cohere claims that its use of Publishers' marks is nominative because "aside from reproducing the mark to identify the content that a user requests, Cohere makes no other use of Plaintiffs' marks." Dkt. No. 50, at 24. But this argument once again misstates Publishers' claim, which is that Command uses Publishers' marks to *falsely attribute* hallucinated articles to Publishers, implying a false affiliation.

Nor is the court persuaded by Cohere's argument that Command's delivery of hallucinated articles falsely attributed to Publishers "has no bearing on the *nature* of the use, which is simply to identify." Dkt. No. 50, at 24. Publishers point out that under this flawed logic, any company could use the *Chanel* mark to identify handbags, for instance, even when those handbags did not originate from Chanel. See Dkt. No. 53, at 23. The court agrees with Publishers. The nominative fair use doctrine does not allow a defendant to use a plaintiff's trademark to falsely attribute its

own goods to the plaintiff. This is precisely the type of conduct that the Lanham Act seeks to prevent.

Cohere's argument that trademark law should not be applied to "communicative products," such as Command's outputs, is unpersuasive. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–34 (2003), the Supreme Court held only that a plaintiff cannot bring a Lanham Act claim for *reverse* passing off based solely on an allegation that a defendant appropriated the plaintiff's communicative content. Nothing in that decision suggests that *Dastar* precludes claims of passing off under the Lanham Act, nor does Cohere cite anything in support of that proposition. *See Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 454 n.18 (S.D.N.Y. 2014); *Williams v. Cavalli*, 2015 WL 1247065, at *5 (C.D. Cal. Feb. 12, 2015).

The court is doubtful that the nominative fair use doctrine applies on the facts of this case. But I need not and will not evaluate the merits of Cohere's nominative fair use argument on a motion to dismiss. *See Grand v. Schwarz*, 2016 WL 2733133, at *4 (S.D.N.Y. May 10, 2016; *Int'l Council of Shopping Centers, Inc. v. Info Quarter, LLC*, 2018 WL 4284279, at *5 (S.D.N.Y. Sept. 7, 2018) (collecting cases). All I can and will do is conclude that the complaint adequately alleges facts that could, if proved, cause a trier of fact to reject application of that doctrine.

For the reasons set forth above, Cohere's motion to dismiss Publishers' Complaint is DENIED.

## CONCLUSION

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 49 from the court's list of open motions.

This is a written opinion.

This constitutes the decision and order of the court. It is a written decision.

Dated: November 13, 2025

U.S.D.J.

BY ECF TO ALL COUNSEL