

June 5, 2026

**_Via ECF_**
Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**Scott Zebrak**
Oppenheim + Zebrak, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Tel. (202) 450-3758
scott@oandzlaw.com

Re: *Advance Local Media LLC,* et al. *v. Cohere Inc.*, No. 25-cv-1305-CM-OTW (S.D.N.Y.)

Dear Judge Wang:

We write on behalf of Plaintiffs to oppose Cohere's letter motion seeking to compel the production of additional documents pursuant to its Request for Production No. 88. *See* Dkt. No. 96. As described below, Cohere seeks a broad swath of documents and overstates the supposed relevance of those documents. Cohere also omits critical context, including on proportionality, burden, and timing. In the circumstances presented, nothing more should be required.

## I.    BACKGROUND

Since September 2025, the parties have engaged in extensive negotiations over non-custodial documents, as well as custodians and search terms, and, to move the case forward, have made a variety of compromises. With respect to the issues of market harm and damages that Cohere cites as the basis for its motion, Plaintiffs have agreed to produce extensive documents across a variety of categories. Those documents include: (1) license agreements, not just with AI companies but also in other categories, such as online platforms, archives, and syndicators; (2) corporate revenue and costs statements broken down different ways over a multi-year period; (3) documents concerning web traffic and the effect of AI; (4) data about cancellation and churn rates; and (5) subscription metrics over a multi-year period.

Plaintiffs have already produced several hundred license agreements, including a few dozen with AI companies, and some others are on their way. As Cohere was made aware, in order to make this production, Plaintiffs had to provide notice to, and/or obtain consent from, a number of these third-party licensees. The ensuing process has been a substantial undertaking over the course of months, involving review of the agreements and, as needed, collection and review of any associated non-disclosure agreements and addendums. Where notice is required, Plaintiffs had to determine who to contact and how to reach them, send out communications and track the timing and any responses, which at times included navigating resistance on production from licensees.

Although Cohere's letter implies that this discovery dispute arose just recently, throughout this process and since as early as September 2025, Plaintiffs have consistently maintained the same position on Cohere's Request for Production No. 88 (the "Request"): Plaintiffs will produce executed licenses with AI companies for use of Plaintiffs' content in training and/or RAG, but will not produce all communications in connection thereto as the request is overbroad and fails the test

of proportionality. Cohere has never provided an explanation as to why the Request is proportional to the needs of the case, let alone at this stage of the case, and fails to do so in its motion.

## II. <u>PRODUCTION OF THE EXECUTED LICENSES IS SUFFICIENT</u>

Cohere mischaracterizes the dozens of highly sensitive and unredacted license agreements with AI companies that Plaintiffs have produced (or are producing) as "a narrow subset of cherry-picked documents." Dkt. No. 96 at 2. But that makes no sense—Plaintiffs are not sampling or refusing to produce any executed AI licenses. With the executed license agreements in hand, Cohere cannot credibly contend it is prevented from "probing the [] market." *Id*. The final executed licenses, as opposed to drafts and communications, are what demonstrate the existence and contours of the market, including pricing and other negotiated terms. Beyond platitudes stating that the documents are relevant, nowhere in Cohere's motion does it explain why negotiations around licenses offer any valuable information about the existing market not already captured by the licenses themselves. Indeed, Cohere's request for all communications about licenses blatantly seeks information that no reasonable person could view as relevant, such as when meetings are scheduled or negotiations over the terms of a choice of law provision.

The fair use caselaw that Cohere relies upon does not advance Cohere's cause. Cohere cites two cases for the proposition that Section 504 permits recovery of actual damages based on the fair market value of a reasonable license fee, *see* Dkt. No. 96 at 2, but they do not speak to the discoverability of licensing negotiations. *See On Davis v. The Gap, Inc*., 246 F.3d 152, 172 (2d Cir. 2001); *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc*., 25 F. Supp. 2d 395, 401 (S.D.N.Y. 1998). Next, Cohere cites two patent cases that contend with the Federal Circuit's guidance on settlement agreements where reliance on such agreements had been historically disfavored. *See* Dkt. No. 96 at 2. Not only are these cases about settlement rather than licensing agreements, but they also plainly do not stand for the proposition cited. In *MSTG, Inc. v. AT & T Mobility LLC*, No. 08 C 7411, 2011 WL 841437, at *1, *3 (N.D. Ill. Mar. 8, 2011), the court ordered production of settlement negotiations only because of a fact intensive contention in plaintiff's expert report, where plaintiff attempted to distance itself from its own licenses, and with the court expressly cabining its ruling to the "specific facts at issue".  In *Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584 (S.D.N.Y. 2011), the court did not consider requests for negotiations at all.[1] Finally, *Google LLC v. Oracle Am., Inc*., 593 U.S. 1, 38 (2021), cautions *against* relying on unrealized licensing opportunities. That does not support discovery of negotiations for executed or unexecuted licenses. *See* Dkt. No. 96 at 2.

There is no merit to Cohere's contention that the discovery is necessary to assess Plaintiffs' alleged damages. This case is about Cohere's infringement and the harm that Cohere causes. Cohere provides no support for its broad contention that courts "routinely find relevant, and therefore discoverable" the requested communications on licensing. Dkt. No. 96 at 3. In both opinions cited by Cohere, the plaintiff's production of communications about AI licenses was not in dispute and thus was never compelled. *See id.* (citing *New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 598 (S.D.N.Y. 2024) ("*NYT*")*,* and *In re OpenAI, Inc., Copyright Infringement Litig.* No. 23-CV-08292, 2025 WL 1652110, at *4 (S.D.N.Y. May 30, 2025)). Moreover, in *NYT*,

---

[1] Cohere's parenthical for *Small* incorrectly implies that Judge Cott compelled production of settlement negotiations. *See* Dkt. No. 96 at 2. Judge Cott ordered production of a settlement agreement. *Small*, 808 F. Supp. at 592. The language Cohere quotes is from a decision from another court that Judge Cott set forth in a string cite. *Id.* at 590.

Your Honor's opinion included a footnote accompanying the cited language in Cohere's motion that clarified that the "documents concerning licensing" plaintiff agreed to produce were not discussions about third-party licenses but instead about "whether to license" to defendant. 757 F. Supp. 3d 594 at 596, n.1, 598. As for *In re OpenAI, Inc.*, to the extent the plaintiff later agreed to produce additional documents on licensing, that was cited as just one of several considerations in Judge Stein's decision upholding Your Honor's orders denying defendant the additional discovery requested. 2025 WL 1652110 at *4, *6. In fact, where the parties disputed production of licensing negotiations for non-AI licenses, this Court denied the discovery, Order, *In re OpenAI, Inc., Copyright Infringement Litig.*, 23-cv-11195 (S.D.NY. Dec. 2, 2024) (Dkt. No. 352), which Judge Stein upheld. *In re OpenAI, Inc.*, 2025 WL 1652110, at *6–*8.

### III.     Cohere's Untethered Request Is Unduly Burdensome and Disproportionate

Even if Cohere could establish some marginal relevance, it is outweighed by critical considerations of burden, including as to timing. Contrary to Cohere's rhetoric, this is not "targeted discovery" or "a defined set of materials[.]" Dkt. No. 96 at 3. Cohere has consistently refused to tailor this request to particular topics within licensing negotiations, adamantly contending again even recently by email that "every aspect of the licensing negotiations is relevant." Cohere seeks literally every single communication made in connection with these complex and sensitive licensing negotiations, as well as every draft term sheet and draft agreement. And, Cohere's insistence on internal communications adds complications with respect to parsing out the inevitable mass of privileged communications.

The burden to collect and produce these communications is high. As Cohere knows, it cannot be resolved by pulling documents from "readily accessible repositories." Dkt. No. 96 at 3. The "standard searches" Cohere envisions would require Plaintiffs to negotiate new search terms and custodians with Cohere. Plaintiffs would need to collect new PSTs; run the new searches; and conduct a careful responsiveness and privilege review. And then, once Plaintiffs finally identify the responsive documents, they would need to restart their notice program to third parties involved in those communications. *See supra.* It is difficult to imagine how this could occur under the current case schedule.

The burden is amplified by the timing of Cohere's motion. Rather than move for this supposedly "highly relevant" discovery months ago, Cohere waited until June 2, 2026, the second business day following the substantial completion deadline for document production, just after Cohere finally provided the bulk of its document production. As a result, the parties could not take any order into account during negotiations on search terms, Plaintiffs' notice program to third parties, or active document discovery. Instead, when the bulk of document discovery should be in the rear-view mirror, with attention turning to depositions, Cohere effectively seeks to reopen it, prejudicing Plaintiffs in multiple ways and preventing the timely and orderly flow of discovery. That is the definition of sandbagging.[2]

For the reasons specified above, Plaintiffs respectfully request that the Court deny Cohere's request for an additional document production.

---

[2] Beside this motion, Cohere recently served Plaintiffs with 61 additional requests for production (RFP Nos. 93 to 153), none of which follow up on any new issues.

Sincerely,

Scott Zebrak