Orrick, Herrington & Sutcliffe LLP
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740

+1 617 880 1800

orrick.com

R. David Hosp
E dhosp@orrick.com
D +1 617 880 1886
F +1 617 880 1801

June 5, 2026

***Sent via ECF***

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

RE: *Advance Local Media LLC, et al. v. Cohere Inc.*, Case No. 1:25-cv-1305-CM-OTW

Dear Judge Wang,

Pursuant to Section IV.b of Your Honor's Individual Practices, Cohere respectfully requests a pre-motion conference regarding Plaintiffs' refusal to produce documents responsive to Cohere's Requests for Production Nos. 29 and 79 (the "Requests")[1], which seek information regarding Plaintiffs' use and development of GenAI tools in the newsroom, including any policies and procedures permitting or regulating such use. The Requests are tailored to capture critical information related to Cohere's fair use defense and to Plaintiffs' alleged economic and reputational harms. The parties last met and conferred via videoconference on March 16, 2026, and have since exchanged several written communications regarding these Requests, but were unable to resolve their dispute.

## I. The Requests Target Materials Directly Relevant to Cohere's Fair Use Defense and Plaintiffs' Claims.

Plaintiffs are refusing to provide Cohere with discovery directly relevant to: (1) Cohere's fair use defense; (2) Plaintiffs' alleged copyright damages; and (3) Plaintiffs' trademark claims. Plaintiffs claim that Cohere's conduct has hindered their opportunity to develop their own GenAI products, premise their copyright damages on their investment in human-generated content, and hinge their trademark claims on the goodwill and reputation associated with high-quality, *human-authored* journalism. Accordingly, Cohere served Request Nos. 29 and 79 to test the veracity of Plaintiffs' claims, support Cohere's copyright and trademark defenses to those claims, and assess the merits of Plaintiffs' alleged damages. *See* Fed. R. Civ. P. 26(b)(1); *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)

---

[1] **Request No. 29** seeks "Documents and Communications concerning Your policies and procedures regarding Your employees' use of generative AI product(s) and service(s), from January 1, 2018, to present"; **Request No. 79** seeks "Documents concerning Your efforts to Train, develop, or use any large language model ('LLM') or any other type of generative AI model, including but not limited to any strategies, plans, projects, or budgets You have created for such work." *See* Ex. A (Cohere's First Set of RFPs).

("Relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.") (citation omitted). But Plaintiffs have refused to produce the discovery Cohere seeks. For the reasons described below, they have no basis to do so in law.

**a. Cohere's Requests Are Relevant to Cohere's Fair Use Defense and Plaintiffs' Alleged Copyright Damages.**

*First*, Cohere's Requests bear directly on the fourth fair use factor—the "effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. §107(4)—which the Supreme Court has deemed the "single most important element" of the analysis. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985). That factor turns on "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015). Here, Plaintiffs allege harm to the market for their own licensed AI chatbot products. They assert that Cohere's conduct "hinders [Plaintiffs'] opportunity to develop, or partner exclusively with another technology company, for example, to develop their own licensed chatbot products." Compl. ¶ 131. But Plaintiffs cannot claim harm to that market while withholding evidence of whether the market exists, whether it is viable, and whether they have genuinely pursued it. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 36 (2021) (plaintiff's own efforts to enter the market it claims was harmed were relevant to the fourth factor). That is precisely what distinguishes this case from this Court's prior ruling in *In re OpenAI, Inc., Copyright Infringement Litigation*, No. 23-CV-08292, 2025 WL 1652110, at *3 (S.D.N.Y. May 30, 2025), in which this Court denied discovery into some of The New York Times's AI practices because, "unlike Oracle's attempt to develop a mobile phone, The Times ha[d] never attempted to develop and train its own generative AI LLM." Plaintiffs here—like Oracle and unlike The Times—openly acknowledge their effort to build their own AI products, and Cohere is entitled to probe the extent of that effort.

*Second*, Cohere's Requests are also relevant to Plaintiffs' alleged copyright damages. Plaintiffs seek actual damages, disgorgement, and statutory damages of up to $150,000 per work for thousands of works in suit. Compl. Prayer ¶ f. The value of those damages turns in part on the resources Plaintiffs actually invest in producing the works at issue. *See Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (statutory damages analysis considers "the expenses saved" by the infringer). And on that score Plaintiffs allege their works are the product of expensive human labor. *See, e.g.*, Compl. ¶ 125 (alleging that Plaintiffs "expend considerable resources to generate content they provide to readers."). If, however, Plaintiffs are themselves relying on LLMs to draft, edit, fact-check, or summarize that content, the premise of their damages theory is materially weakened. For this reason too, Plaintiffs have no ground to refuse Cohere's Requests.

orrick

**b. Plaintiffs' AI Use Bears Directly on the Goodwill and Reputational Harm at the Core of Their Trademark Claims.**

Finally, Cohere's Requests are relevant to Plaintiffs' trademark claims. Those claims rest, in part, on the premise that the value of Plaintiffs' marks derives from their association with human-authored journalism and that Cohere allegedly mars those marks "[b]y displaying articles that purport to have been written by [Plaintiffs]," and therefore humans, "but in fact were generated by one of [Cohere's AI models]." *See, e.g.*, Compl. ¶ 132. In doing so, Plaintiffs have put at issue (1) the extent to which their journalism is the product of human- rather than AI-authorship; and (2) whether the value of the goodwill Plaintiffs ask the Court to protect accurately accounts for Plaintiffs' own AI use. *See, e.g.*, *Ideavillage Prods. Corp. v. Aarhus*, No. 118CV02739JGKSDA, 2019 WL 2290514, at *7 (S.D.N.Y. May 7, 2019) (considering the value of plaintiff's reputation and goodwill in determining statutory damages); *JUUL Labs Inc. v. Chou*, No. 2:21-CV-03056-DSF-PD, 2022 WL 2165411, at *9 (C.D. Cal. Feb. 11, 2022) (reasoning that plaintiff's goodwill and reputation were "inextricably linked to the value of the trademark"); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) (reasoning that, in trademark cases involving "amorphous damage, courts assessing statutory damages must exercise discretion in examining *whatever facts and considerations are available* in a setting of limited information") (emphasis added).

Requests 29 and 79 strike squarely at these issues by seeking information regarding Plaintiffs' AI usage. If Plaintiffs are in fact relying in part on LLMs to ideate, draft, edit, fact check, or summarize content distributed under their marks, then the consumer association on which Plaintiffs' damages theory depends—that these marks are imbued with value through their association with human reporting and editorial judgment—is at best weakened, and at worst, shown false. Plaintiffs therefore have no basis to refuse to provide Cohere with discovery on these topics.

To the extent Plaintiffs argue that any such policies are irrelevant insofar as they do not specifically address *Cohere's products* at issue in this case, Plaintiffs concede in their Complaint that "hallucinations"—to the extent they actually occur—are not unique to Cohere's products. The Complaint alleges that *LLMs generally* "are not guaranteed to provide accurate information" and "will 'hallucinate,' or fabricate, plausible sounding but inaccurate information in response to user prompts." Compl. ¶ 74. And Plaintiffs assert that this same *industry-wide* phenomenon is what "causes substantial reputational harm to Publishers and damages the public trust." *Id.* ¶132. If Plaintiffs themselves utilize or leverage LLMs—Cohere's or any competitors'—in the drafting, production, editing, fact-gathering, fact-checking, or summarization of content distributed under their marks, that conduct is directly relevant to several issues Plaintiffs have placed in dispute.

## II. <u>The Request is Narrowly Tailored and Proportional.</u>

Finally, Cohere's Requests are neither unduly burdensome nor disproportionate to the needs of the case. Plaintiffs seek statutory damages of up to $150,000 per work for thousands of works, in addition to actual damages, disgorgement, and injunctive relief. Against a potential

exposure of that magnitude, the cost of producing the targeted materials Cohere seeks is modest by any reasonable measure. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 321 (S.D.N.Y. 2003). And the discovery Cohere seeks is narrowly tailored: it is confined to a discrete category of documents that Plaintiffs either maintain in the ordinary course of business or can locate through straightforward custodian-and-keyword searches.

For these reasons, Cohere respectfully requests that the Court grant its motion and compel Plaintiffs to produce documents related to their use and development of GenAI tools in the newsroom and any policies and procedures governing such use.

Sincerely,

*/s/ R. David Hosp*

R. David Hosp