June 10, 2026



WASHINGTON – NEW YORK

**Via ECF**
Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**Scott Zebrak**
Oppenheim + Zebrak, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Tel. (202) 450-3758
scott@oandzlaw.com

Re: *Advance Local Media LLC, et al. v. Cohere Inc.*, No. 25-cv-1305-CM-OTW

Dear Judge Wang:

We write on behalf of Plaintiffs to oppose Cohere's request for a pre-motion conference regarding its RFP Nos. 29 and 79. *See* Dkt. No. 100. Plaintiffs' alleged use and development of AI tools is wholly irrelevant. This case is about Cohere's infringement and the resulting harm. It is not a debate on AI generally, or whether Plaintiffs use an AI tool. Just like in *New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594 (S.D.N.Y. 2024), the discovery is not justified. Cohere's demand presents an undue burden, especially at this stage of discovery. Cohere also neglects the documents that Plaintiffs already produced, which are sufficient. Nothing more should be required.

## I.  Cohere's Requests Are Not Relevant

Cohere's demanded discovery is a needless attempt to intrude into journalistic processes protected by the First Amendment. Each of Cohere's arguments as to relevance is easily rejected.

*First*, this Court and Judge Stein have already denied the same discovery that Cohere seeks from Plaintiffs. Specifically, this Court rejected discovery requests concerning the New York Times's use of non-parties' generative AI tools and the Times's creation and use of its own generative AI products. *New York Times Co.*, 757 F. Supp. 3d at 596, 599; *In re OpenAI, Inc., Copyright Infringement Litig.*, No. 23-CV-08292, 2025 WL 1652110, at *3-*5 (S.D.N.Y. May 30, 2025) (denying motion to set aside order in *New York Times Co.,* 757 F. Supp. 3d 594).

This Court's reasoning from its opinion applies equally to the discovery that Cohere seeks from Plaintiffs:

> This case is about whether Defendant trained their LLMs using Plaintiff's copyrighted material, and whether that use constitutes copyright infringement. It is not a referendum on the benefits of Gen AI, on Plaintiff's business practices, or about whether any of Plaintiff's employees use Gen AI at work. The broad scope of document production sought here is simply not relevant to Defendant's purported fair use defense.

*New York Times Co.*, 757 F. Supp. 3d at 599. Further, as Judge Stein explained:

> *Oracle* does not stand for the proposition that evidence of the plaintiff's activities is *always* relevant. Indeed, unlike Oracle's attempt to develop a mobile phone, The

Times has never attempted to develop and train its own generative AI LLM.

*In re OpenAI, Inc.*, 2025 WL 1652110, at *3 (citation omitted) (emphasis in original). Cohere's pre-motion letter acknowledges these rulings, without disputing their sound reasoning. Cohere's attempt to distinguish their application to this case is unpersuasive.

In arguing relevance based on a snippet of one sentence in one paragraph of Plaintiffs' 64-page Complaint, Cohere loses the forest for the trees. Just like in the *New York Times* case, where the Times's allegations were "tightly focused" on the defendant's AI products and their use of the Times's copyrighted content, Plaintiffs' allegations focus on Cohere and its infringement of Plaintiffs' intellectual property. *See* Compl. ¶¶ 1-10, 60-166. In the *New York Times* case, the discovery was denied because, like here, the Times produced documents sufficient to establish a viable market and had "never attempted to develop and train its own generative AI LLM." *In re OpenAI, Inc.*, 2025 WL 1652110, at *3-*4. Plaintiffs here are news organizations, whose business depends on monetizing their copyrighted content, not AI companies building LLMs. The harm at issue in this case concerns the former, not the latter. Cohere confuses the issues by pointing to Plaintiffs' allegation that Cohere's infringement "hinders [Plaintiffs'] opportunity to develop, or partner exclusively with another technology company, for example, to develop their own licensed chatbot products."[1] *See* Dkt. No. 100 at 2. That is not an allegation that Plaintiffs build their own LLMs, nor is it remotely akin to Oracle building a phone to compete with Google's Android phone.

**_Second_**, Cohere argues that its requests are relevant to Plaintiffs' alleged copyright damages. Dkt. No. 100 at 2. But this argument does not fare any better. It did not justify the same discovery sought in the *New York Times* case, where, like here, the Times also alleged that their works were the product of resource-intensive labor. *Compare* Compl. ¶¶ 31-38, *New York Times Co. v. Microsoft Corp. et al*, No. 23-cv-11195 (S.D.N.Y. Dec. 27, 2023), Dkt. No. 1 ("It takes enormous resources to publish . . . That output is the work of approximately 5,800 full-time equivalent Times employees), *with* Mot. at 2, *New York Times Co. v. Microsoft Corp. et al*, No. 23-cv-11195 (S.D.N.Y. Sept. 3, 2024), Dkt. No. 236 (arguing demand for "billions of dollars in statutory and actual damages" justifies evidence of Times's use of generative AI). Cohere claims this discovery is relevant as to the level of resources Plaintiffs invest, but as addressed below, Plaintiffs have produced that information.

**_Third_**, Cohere hallucinates that the primary purpose of Plaintiffs' trademark claim is to assert the value of human-authored journalism over AI-generated content. Plaintiffs' claim is far more straightforward: Cohere has produced poorly written slop, often with egregious inaccuracies, under Plaintiffs' good names. Dkt. No. 1 ¶ 132. The elements of the claim are that Plaintiffs own valid marks, that Cohere has used the marks in commerce, and that as a result, there is a likelihood of confusion. No element considers if Plaintiffs use AI products in their businesses. Similarly, a

---

[1] For clarity, Plaintiffs' Paragraph 131 is included in its entirety:

> Cohere's misconduct also invades Publishers' emerging business interests in licensing to AI companies. The AI industry has begun to pay for licenses from various content owners including Publishers to use their content in connection with their models. Cohere's unlawful use of Publishers' works, including in training and through RAG, evades the obligation to pay for a license for that content, and more significantly, undermines existing and emerging licensing markets. It also hinders Publishers' opportunity to develop, or partner exclusively with another technology company, for example, to develop their own licensed chatbot products.

Dkt. No. 1 ¶ 131.

damages analysis considers the strength of Plaintiffs' marks (which, as described below, Cohere is getting discovery on) and the harm Cohere causes, not if Plaintiffs use an AI tool.

## II. Cohere's Requests Present An Undue Burden

Any marginal relevance would also be outweighed by critical considerations of burden, including as to timing. Contrary to Cohere's rhetoric, these requests are not "tailored," nor do they seek "a discrete category of documents." Dkt. No. 100 at 1, 4.

Even if limited to employees "in the newsroom," Dkt. No. 100 at 1, as opposed to employees anywhere in their organization (Cohere's position in conferrals), the burden remains high. Cohere's motion focuses on "GenAI tools." Dkt. No. 100 at 1, 4. And, RFP 29 remains as vague and broad today as when served, as Cohere has adamantly refused to clarify or limit it. Cohere's discovery requests provide definitions for "Generative AI Technologies" and "Generative AI System(s)," but neither of those terms nor the term "GenAI tools" appears in RFP 29, which seeks discovery concerning "generative AI product(s) and service(s)." Dkt. No. 100-1 at 4, 12. Cohere does not focus on any particular "GenAI tools," and its expansive demand could even encompass use of things such as the Google search engine in "AI Mode."

Cohere's assertion that the costs associated with searching for and producing the materials it seeks are "modest" is a hollow one. Dkt. No. 100 at 4. Cohere seeks not just AI policies but also communications. The "straightforward custodian-and-keyword searches" Cohere envisions would require the parties to negotiate new search terms and custodians. *Id*. Plaintiffs would need to collect new PSTs; run the new searches; and conduct a careful responsiveness and privilege review. It is difficult to imagine how this could occur under the current case schedule. By delaying for months, only to sandbag Plaintiffs at this late stage, as attention turns to depositions, Cohere has substantially increased the burden on Plaintiffs. Dkt. No. 99 at 3 (discussing burden).

## III. Cohere Has Already Received Sufficient Documents

Cohere overlooks the extensive discovery that it has already received across a variety of categories pertinent here. Plaintiffs produced various financial information, including costs statements with publication and advertising expenses. Plaintiffs produced copies of the articles that identify the authors, as well related contracts or employment data. Plaintiffs also produced various editorial and newsroom-related policies, including editorial guidelines, contributor guidelines, and editorial values and standards. Several of these documents address use (or not) of artificial intelligence. To show a viable market exists for AI licensing, Plaintiffs produced license agreements with AI companies for use of Plaintiffs' works for training or RAG. *See* Dkt. No. 99 at 1. Plaintiffs produced documents concerning their marks and their strength, including surveys on reputation for quality, accuracy, and originality. Accordingly, even (hypothetically) if there were some marginal relevance to Cohere's requests, Plaintiffs' existing production is sufficient.

Plaintiffs respectfully request the Court deny Cohere's request for a further production.

Sincerely,

Scott Zebrak